**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LEE KEARNEY,** individually, and
**SOUTHEAST PROPERTY ACQUISITIONS, LLC,**

Plaintiffs,

v. Case No. 8:25-cv-02077-WFJ-SPF

**CEDAR OAK REI, INC.,**

Defendant.
_______________________________/

# ORDER

Before the Court is Plaintiffs Lee Kearney ("Kearney") and Southeast Property Acquisitions, LLC's ("SPA") (collectively, "Plaintiffs"), Dkt. 62, and Defendant Cedar Oak REI, Inc.'s ("Cedar Oak"), Dkt. 56, Cross-Motions for Summary Judgment. Both parties have responded in opposition, Dkts. 57, 68, and Cedar Oak has filed a reply in support of its Motion, Dkt. 67. The Court has also held a hearing on the Motions. Dkt. 71. Upon careful consideration of the submissions of the parties and the record, Defendant's Motion is granted and Plaintiffs' Motion is denied.

## BACKGROUND

Cedar Oak is a real estate investing corporation organized under the laws of Idaho. Dkt. 56-1 ¶ 3; Dkt. 59-1 at 6:15–17[1]. Kearney is a resident of Hillsborough County, Florida. Dkt. 55-1 at 9:8–11; Dkt. 60 ¶ 2. SPA is a Florida limited liability company operating in Hillsborough County, Florida. Dkt. 54-1 at 7:9–12; Dkt. 60 ¶ 3. Kearney is the sole owner and manager of SPA. Dkt. 54-1 at 7:21–23; Dkt. 63 ¶ 7.

On April 14, 2023, Cedar Oak provided a loan in the amount of $300,000.00 (the "Loan") to Trust No. 2018001 (the "Trust"). Dkt. 56-1 ¶ 4; Dkt. 64 ¶ 4. The Loan was made pursuant to the terms of a balloon promissory note (the "Note") and was secured by a Mortgage and Security Agreement (the "Security Agreement"), each executed by Kenneth Stillwell as Trustee for the Trust. Dkt. 56-1 ¶¶ 4–5; Dkts. 56-2, 56-3; Dkt. 60 ¶¶ 5–7. The Note provided a fourteen-day maturity term at 2% interest. Dkt. 56-2; Dkt. 59-1 at 22:19–23:5; Dkt. 69 ¶¶ 9–10.

Neither Kearney nor SPA were signatories to the Note or the Security Agreement. Dkt. 54-1 at 14:2–7, 15:7–10; Dkt. 55-1 at 68:23–25, 70:10–11; Dkts. 56-2, 56-3; Dkt. 60 ¶¶ 9, 14. Additionally, the Trust is the sole owner of the property subject to the Security Agreement, Dkt. 55-1 at 64:25–65:5; Dkt. 60 ¶ 8, and neither

---

[1] Deposition citations, Dkts. 54-1 (SPA's Deposition), 55-1 (Kearney's Deposition), 59-1 (Cedar Oak's Deposition), refer to the page number of the deposition transcript and not the page number generated by CM/ECF.

Kearney nor SPA are trustees for or beneficiaries of the Trust, Dkt. 54-1 at 40:4–8; Dkt. 56-1 ¶¶ 13–14; Dkt. 56-5. However, the same day the Note and Security Agreement were executed, Kearney, in his individual capacity, executed a Guaranty of Payment and Performance (the "Guaranty") for the Loan. Dkt. 54-1 at 15:20–25; Dkt. 55-1 at 70:17–24; Dkt. 56-1 ¶¶ 7–8; Dkt. 56-4; Dkt. 60 ¶¶ 12–13; Dkt. 63 ¶ 11; Dkt. 69 ¶ 11.

On April 28, 2023, the Note matured unpaid. Dkt. 69 ¶ 19. Thereafter, Cedar Oak charged 2% interest per week on the outstanding principal and withheld the release of its collateral until those payments were made in full. Dkt. 54-1 at 29:18–22, 38:9–12; Dkt. 55-1 at 72:21–24; Dkt. 58-2 at 3–7; Dkt. 59-1 at 26:20–23, 29:4–7, 29:8–11, 31:3–10, 41:10–13; Dkt. 69 ¶¶ 24–28, 30.

SPA made every payment Cedar Oak received on the Loan. Dkt. 55-1 at 71:5–9; Dkt. 56-1 ¶ 16; Dkt. 59-1 at 43:11–15; Dkt. 60 ¶ 15; Dkt. 63 at ¶ 31; Dkt. 64 ¶ 4; Dkt. 69 ¶ 31. Kearney did not make any payments in his individual capacity. Dkt. 55-1 at 71:10–12; Dkt. 56-1 ¶ 18; Dkt. 60 ¶ 17. Kearney is also not obligated to repay SPA for the payments it made to Cedar Oak and has not done so. Dkt. 54-1 at 13:7–10; Dkt. 55-1 at 72:9–13; Dkt. 60 at ¶¶ 18–19.

By the time the Loan was paid in full on October 20, 2023, Cedar Oak had received $427,979.64 in connection with the Loan. Dkt. 58-2 at 19–23; Dkt. 59-1 at 29:18–22, 43:13–15, 47:2–25; Dkt. 64 ¶ 4; Dkt. 69 ¶¶ 30, 32–36, 37–39.

On September 30, 2025, Plaintiffs filed the operative complaint alleging the following claims against Defendant: Criminal Usury – Violation of Section 687.071 of the Florida Statutes (Count I); Money Had and Received (Count II); Violation of Florida's Civil Usury Statute – In the Alternative (Count III); and Unjust Enrichment – In the Alternative (Count IV). Dkt. 18 ¶¶ 20–47.

## LEGAL STANDARD

Summary judgment is only appropriate when there is "no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(a). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of proving the absence of a genuine issue of material fact, *Celotex*, 477 U.S. at 323, and all factual inferences are drawn in favor of the non-moving party, *Anderson*, 477 U.S. at 255. Once the moving party satisfies its initial burden, it shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *See Zenith*, 475 U.S. at 587.

In considering cross-motions for summary judgment, the Court draws all factual inferences in favor of the non-moving party on each motion. *See Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012). Thus, "[w]hen parties jointly move for summary judgment, the court has three options: granting summary judgment for the plaintiff under the defendant's best case, granting summary judgment for the defendant under the plaintiff's best case, or denying both motions for summary judgment and proceeding to trial." *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 959 (11th Cir. 2023).

## DISCUSSION

### I. Counts I & III

#### *a. Standing*

Cedar Oak contends that Plaintiffs lack Article III standing. Dkt. 56 at 5–15; Dkt. 68 at 6–12. Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III § 2. To have a case or controversy, a plaintiff must establish standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Standing requires an injury in fact that is concrete, particularized, and actual or imminent, fairly traceable to the defendant's conduct, and likely to be redressed by judicial relief. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Plaintiffs contend that they have standing because Florida's usury statutes identify them as claimants. Dkt. 57 at 7–8; Dkt. 62 at 10–11. Plaintiffs point to section 687.04(1)(c) which provides a remedy to "the party from whom such usurious interest has been reserved, taken, or exacted" and section 687.071(1)(c) which defines the term "debtor" as "any person who guarantees the repayment of a loan of money for another person." Dkt. 57 at 7–8; Dkt. 62 at 10–11. Therefore, Plaintiffs argue that SPA has standing because it made every payment Cedar Oak received on the Loan and Kearney has standing because he executed the Guaranty. Dkt. 57 at 7–8; Dkt. 62 at 10–11.

However, the Supreme Court has rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). As such, regardless of how Florida's usury statutes define their potential claimants, the Court must still independently decide whether both Kearney and SPA have suffered a concrete harm under Article III. *See Ramirez*, 594 U.S. at 426 ("[A] statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III[.]"); *see also Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation.")

A plaintiff can show a that a statutory violation constitutes a concrete harm in two ways. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926 (11th Cir. 2020).

"The first is to show that the statutory violation itself caused a harm." *Id.* "Such harms can be tangible or intangible." *Id.* Examples of tangible harms include physical injury or financial loss. *Id.* Intangible harms can be concrete if they have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* (quoting *Spokeo*, 578 U.S. at 341). Examples include "reputational harms, disclosure of private information, and intrusion upon seclusion." *Ramirez*, 594 U.S. at 425 (collecting cases).

The second is to show that the statutory violation created a "risk of real harm." *Muransky,* 979 F.3d at 927 (citing *Spokeo*, 578 U.S. at 341). The risk must be "material," *Spokeo*, 578 U.S. at 342, and thus "conceivable and trifling" risks do not qualify, *Muransky,* 979 F.3d at 927. Additionally, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." *Ramirez*, 594 U.S. at 436 (emphasis in original).

Kearney, in his individual capacity, never made any payments to Cedar Oak. Additionally, Kearney has no obligation to reimburse SPA for any payments it made to Cedar Oak and has not done so. The only connection Kearney has to the Loan is

the Guaranty, which he was not called upon to perform. Thus, Kearney lacks standing to pursue this action against Cedar Oak. *See Avondale Decor, LLC v. Cap. Sols. Bancorp. LLC*, No. 2:25-CV-450-JES-NPM, 2026 WL 151845, at *10 (M.D. Fla. Jan. 21, 2026), *appeal dismissed sub nom. Andris v. Cap. Sols. Bancorp, LLC*, No. 26-10484, 2026 WL 1130390 (11th Cir. Apr. 27, 2026).

While SPA did make payments to Cedar Oak, it was under no obligation to do so. No contractual relationship existed between SPA and Cedar Oak.[2] The Trust, not SPA, was the owner of the collateral property that Cedar Oak withheld from releasing until the Loan was paid in full. As such, all of SPA's payments to Cedar Oak were caused by its voluntary decision to pay another party's debt rather than the terms of the Note or any action taken by Cedar Oak. Additionally, for the same reason, even if SPA had proved a concrete injury in fact, that injury would not be fairly traceable to Cedar Oak's conduct. Thus, SPA also lacks standing to pursue this action against Cedar Oak.

*b. Merits*

---

[2] The absence of a contractual relationship between SPA and Cedar Oak also presents an independent ground for finding that SPA lacks standing. Florida courts have explained that "usury is purely a personal defense created by statute for the protection of borrowers[.]" *Gunn Plumbing, Inc. v. Dania Bank*, 252 So. 2d 1, 4 (Fla. 1971). Based on this characterization, courts have found that an entity who is not a party to the underlying loan lacks standing to raise usury as an affirmative defense. *See Freeman v. JPMorgan Chase Bank N.A.*, 675 F. App'x 926, 7 n.9 (11th Cir. 2017); *Adana Investing, Inc. v. Wells Fargo Bank*, N.A., No. 1:16-CV-21562-UU, 2017 WL 3668553, at *14 (S.D. Fla. Apr. 10, 2017). It logically follows that this principal also holds true when usury is asserted offensively, as a claim. Thus, SPA, as a non-party to the Loan, lacks standing to assert usury.

While the standing analysis is dispositive, the Court notes that even if SPA had established standing to bring its claims, they would have still failed on the merits.

To state a claim for usury, a plaintiff must allege facts showing (1) an express or implied loan, (2) an obligation to repay, (3) an interest rate greater than the rate permitted by law, and (4) the lender's corrupt intent. *See Dixon v. Sharp*, 276 So. 2d 817, 819 (Fla. 1973). "[T]he usurious nature of a transaction is established at the *inception* of the transaction." *Oregrund Ltd. P'ship v. Sheive*, 873 So. 2d 451, 458–59 (Fla. 5th DCA 2004) (citations omitted) (emphasis in original).

The Note and the Security Agreement identify as the borrower, and detail the obligations of, the Trust, not SPA. Additionally, SPA is also not a signatory to either the Note, the Security Agreement, or the Guaranty. As such, there is neither an express or implied loan nor an obligation to repay between Cedar Oak and SPA.

## II. Counts II & IV

### *a. Abandonment*

Plaintiffs did not address Counts II and IV in their Response in Opposition to Cedar Oak's Motion for Summary Judgment, Dkt. 57, or their Motion for Summary Judgment, Dkt. 62, and as such, the Court treats those claims as abandoned for proposes of evaluating the cross-motions and grants summary judgment on that basis. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 971 n.36 (11th

Cir. 2008), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ("The claim fails for alternative reasons. First, [Plaintiff] did not defend the claim on summary judgment; he thus abandoned it."); *see also Powell v. Am. Remediation & Env't, Inc.*, 61 F. Supp. 3d 1244, 1252 n.9 (S.D. Ala. 2014) ("Where a party wholly fails to respond to a summary judgment motion, the district court must make sure that it nonetheless is appropriate to enter summary judgment against the party that did not respond; in contrast, where the non-moving party fails to address a particular claim asserted in the summary judgment motion but has responded to other claims made by the movant, the district court may properly consider the non-movant's default as intentional and therefore consider the claim abandoned.") (citation omitted), *aff'd* 618 F. App'x 974 (11th Cir. 2015).

*b. Merits*

While Plaintiffs' abandonment is dispositive, the Court notes that even if Plaintiffs had not abandoned their claims, they would have still failed on the merits.

In Florida, causes of action under unjust enrichment and money had and received share the same elements. *See Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1384 (S.D. Fla. 2010) (citing *Equilease Corp. v. Hentz*, 634 F.2d 850, 853 (5th Cir. 1981)). To prevail under either cause of action, Plaintiffs must show that (1) they conferred a benefit on Defendant; (2) Defendant appreciated such

benefit; and (3) acceptance and retention of such benefit by Defendant under the circumstances would be inequitable without paying for it. *See id.* (citation omitted).

Kearney, in his individual capacity, never made any payments to, and so did not confer any benefit on, Cedar Oak. *See Kelly*, 681 F. Supp. 2d at 1385. While SPA did make payments to Cedar Oak, it was under no obligation to do so and thus, its claims would be barred by the voluntary payment doctrine. *See City of Mia. v. Keton*, 115 So. 2d 547, 551 (Fla. 1959) ("[W]here one makes a payment of any sum under a claim of right with knowledge of the facts such a payment is voluntary and cannot be recovered.").

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Defendant's Motion for Summary Judgment, Dkt. 56, is **GRANTED**.

(2) Plaintiffs' Motion for Summary Judgment, Dkt. 62, is **DENIED**.

(3) Plaintiffs' Amended Complaint, Dkt. 18, is **DISMISSED** with prejudice.

(4) The Clerk is **DIRECTED** to enter final summary judgment in favor of Defendant Cedar Oak REI, Inc. and against Plaintiffs Lee Kearney and Southeast Property Acquisitions, LLC consistent with this Order and close the case.

**DONE AND ORDERED** at Tampa, Florida, on November 13, 2026.

*/s/ William F. Jung*

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record